**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 16-cv-2849-RM-NRN

CARLOS JURADO,

      Plaintiff,

v.

OFFICER MARTIN TRITSCHLER, in his individual capacity;
OFFICER BRUCE KAY, in his individual capacity;
OFFICER JEFF DiMANNA, in his individual capacity;
OFFICER ERNEST SANDOVAL, in his individual capacity;
OFFICER JERMEY McCONNELL, in his individual capacity;
OFFICER NICOLAS HASSMAN, in his individual capacity; and
CITY AND COUNTY OF DENVER, COLORADO, a home-rule municipality,

      Defendants.

---

## ORDER

---

      This case arises from an officer-related shooting of a passenger in a vehicle. This matter is now before the Court on Defendant Tritschler's motion for summary judgment (ECF No. 53) as to Plaintiff's claim for excessive force in violation of the Fourth Amendment. The motion is fully brief. Upon consideration of the motion and related briefing, and the applicable law, and being otherwise fully advised, the Court finds and orders as follows.

### I.    FACTUAL AND PROCEDURAL BACKGROUND

      The following is gleaned from the supporting papers submitted by the parties, to which no party has objected. Accordingly, the Court will rely on the papers submitted. *See* Fed. R. Civ. P. 56(c).

      On November 20, 2014, sometime after about 10:30 p.m., Defendant Tritschler and five other officers from the Denver Police Department (collectively, "Denver Police") responded to

Aurora Police requesting through police dispatch immediate cover to stop a vehicle that was eluding them. The five other officers are the other individually named Defendants in this case. Defendant Tritschler and his partner, Officer McConnell, were in one police vehicle. Officers Sandoval and DiManna were in a second police vehicle, while Officers Hassman and Kay were in a third police vehicle. The eluding vehicle was a Ford F-150 driven by Joel Jurado, Plaintiff's brother, in which Plaintiff was the front seat passenger.

Ultimately, Denver Police followed the F-150 into an industrial tractor trailer parking lot in Commerce City. The driver drove the F-150 between two parked tractor trailers and stopped. The F-150 was blocked from going forward by the parking lot fence, while Officers Sandoval and DiManna's vehicle ("Vehicle 2") was parked about 10 feet behind the F-150, also between the two parked tractor trailers. Officers Kay and Hassman parked their vehicle behind Vehicle 2. Defendant Tritschler and his partner, along with Officers DiManna and Sandoval, exited their vehicles and immediately started to yell to Plaintiff and the driver to "put it in park," "stop the vehicle," "stop moving," and "show us your hands." All officers had their weapons drawn when they approached the F-150 giving commands. Neither Plaintiff nor the driver, however, were complying with the commands so Defendant Tritschler used a trailer adjacent to the F-150 as cover.

There is lighting in the parking lot but not in the area where the F-150 had stopped. Nonetheless, the F-150 was lit due to headlights from Defendant Tritschler's vehicle and lights from one or more of the other Denver Police vehicles. Defendant Tritschler and Officer Kay approached the passenger side of the F-150; the passenger door was locked so Officer Kay broke out the passenger window with a baton, with Defendant Tritschler providing cover. Plaintiff screamed when the window was broken. With the window broken, Defendant Tritschler could

see better into the F-150 but not entirely because there was no ambient light there; he had no idea if the driver and Plaintiff were armed. The officers continued to yell commands and Officer Tritschler moved back to the cover of the trailer.

Meanwhile, the driver looked around, put the car in drive, tried to move it, and ultimately gunned the F-150 in reverse towards Vehicle 2. At that time, Officers Sandoval and Hassman were standing between the rear of the F-150 and Vehicle 2, and Officer DiManna was standing at the front-left side of Vehicle 2. When the F-150 went into reverse, Officer DiManna dove out of the way and Offices Sandoval and Hassman ran out of the way. The officers could hear gunshots. The rear of the F-150 hit and moved Vehicle 2.[1]

The gunshots came from Defendant Tritschler. During this time, Defendant Tritschler was aware there were other officers behind the F-150 when the driver gunned it in reverse. Because of the F-150's movement, sometimes Plaintiff was in Defendant Tritschler's field of vision and sometimes he was not. When the F-150 gunned in reverse, Defendant Tritschler got a clearer view of the driver and fired three shots at the driver. When the F-150 stopped, some officers pulled Plaintiff from the F-150 and handcuffed him, taking him into custody. Other officers took the driver into custody.

Plaintiff and the driver were wounded from Defendant Tritschler's gunshots. Plaintiff thereafter filed this 42 U.S.C. § 1983 action alleging Defendants used excessive force in violation of the Fourth Amendment. Defendants filed a Motion to Dismiss which the Court granted in part and denied in part. The Court granted the Motion to Dismiss as to all Defendants except Defendant Tritschler. As to him, the Court converted the Motion to Dismiss to a motion for summary judgment ("MSJ") and directed briefing. Plaintiff filed a response and Defendant Tritschler filed a reply. The matter is ripe for resolution.

---

[1] A schematic of the location of the various vehicles after the F-150 hit Vehicle 2 is attached. (ECF No. 76-1, p. 17.)

## II.     LEGAL STANDARD

Summary judgment is appropriate only if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Gutteridge v. Oklahoma*, 878 F.3d 1233, 1238 (10th Cir. 2018).  Applying this standard requires viewing the facts in the light most favorable to the nonmoving party and resolving all factual disputes and reasonable inferences in his favor.  *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 461 (10th Cir. 2013).  However, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).  Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or is so one-sided that one party must prevail as a matter of law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000).  A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party.  *Anderson*, 477 U.S. at 248.

Qualified immunity shields individual defendants named in § 1983 actions unless their conduct was unreasonable in light of clearly established law.  *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014).  "[W]hen a defendant asserts qualified immunity, the plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct."  *Id.* (quotation omitted).  The district court may address the steps in either order.  *Carabajal v. City of Cheyenne, Wy.*, 847 F3d 1203, 1208 (10th Cir. 2017)

4

(citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).  If the plaintiff fails to satisfy either part of his burden, the court must grant qualified immunity.  *Id*.

## III.    ANALYSIS

Plaintiff's amended complaint against Defendant Tritschler is based on one claim for excessive force under the Fourth Amendment, alleging Defendant Tritschler seized Plaintiff as he was shot twice in the F-150.  The Fourth Amendment protects individuals against "unreasonable searches and seizures."  U.S. Const. amend. IV.  To establish Plaintiff's claim under the Fourth Amendment, he must demonstrate that a "seizure" occurred and that the seizure was "unreasonable."  *Carabajal*, 847 F3d at 1208.  In the MSJ, Defendant Tritschler argues he is entitled to qualified immunity because Plaintiff was not seized and, even if Plaintiff could establish a Fourth Amendment seizure, he fails to establish the law was clearly established at the time of the incident.  In response, Plaintiff argues otherwise and in a throwaway argument asserts there is a genuine issue of material fact as to not only whether there was a seizure and but also whether it was reasonable.  In reply, Defendant Tritschler also raises the argument that his conduct was reasonable.[2]  The Court examines these arguments in turn.

### A.  Seizure of Plaintiff

Defendant Tritschler contends that a seizure can only take place where an officer actually intends to apply force to an individual, i.e., only if the plaintiff is the intended objected of a deliberate use of force.  Here, Defendant Tritschler argues, the driver was the intended target and he, albeit unsuccessfully, attempted to avoid injuring Plaintiff.

Other than a general citation to *Brower v. City of Inyo*, 489 U.S. 593, 596-97 (1989), Plaintiff's response is devoid of any analysis or citation to any applicable legal authority.  But, it is Plaintiff's burden to show that a seizure occurred.  A burden which he fails to meet here.

---

[2] Plaintiff did not object to Defendant Tritschler's reply or ask for leave to submit any surreply.

The facts in *Childress v. City of Arapaho*, 210 F.3d 1154 (10th Cir. 2000) are analogous to this case. There, as relevant here, two hostages claimed police officers violated their Fourth Amendment rights during the pursuit of escaped prison inmates. During the chase, in which the plaintiff hostages were passengers in their minivan stolen by the inmates, the police officers fired a total of 21 rounds into the minivan. Those shots injured both plaintiff hostages. The hostages alleged the officers effected a seizure of them. The Tenth Circuit Court of Appeals found otherwise.

Specifically, citing *Brower*, *supra*, and cases from other federal circuits, the Tenth Circuit found no seizure because:

> The police officers in the instant case did not "seize" plaintiffs within the meaning of the Fourth Amendment but rather made every effort to deliver them from unlawful abduction. The officers *intended to restrain the minivan and the fugitives*, not [plaintiffs] Mrs. Childress and Caitlyn. The injuries inflicted were the unfortunate but not unconstitutional "accidental effects of otherwise lawful conduct."

*Childress*, 210 F.3d at 1157 (emphasis added). Plaintiff apparently contends he was not a bystander but, rather, a passenger whom Defendant Tritschler considered a threat during the entire time. Thus, Plaintiff asserts, it strains credibility that he was no longer deemed a threat when the F-150 started moving, raising a genuine of issue of material fact as to Defendant Tritschler's intent.

The Court disagrees. The record establishes there is insufficient evidence to create a material factual dispute regarding Defendant Tritschler's intent. The evidence is undisputed that the driver was moving the F-150 and gunning the vehicle into reverse with other officers in the line of danger. Based on such facts, a reasonable jury could not conclude that Defendant Tritschler intended to shoot Plaintiff (even if he was not a bystander) rather than to shoot the driver to stop the F-150. Plaintiff's argument to the contrary is not evidence and insufficient to

create a triable issue of fact. Accordingly, on this basis, no seizure occurred; therefore, Plaintiff's Fourth Amendment rights were not violated.

Plaintiff also contends that he was seized in several ways during that night, from first contact when Defendant Tritschler aimed his gun at Plaintiff to when Plaintiff was pulled out of the F-150, patted down, handcuffed, and placed into custody. Defendant Tritschler counters that whether Plaintiff was seized, or even assuming he was seized, at any other point in time is irrelevant because his claim is premised on the shots made by Defendant Tritschler. The Court agrees. Plaintiff's claim is premised on his being shot and not on any other conduct, such as a traffic stop or his subsequent arrest. Accordingly, that he may have been seized at any other time is irrelevant to whether he was seized during the relevant time. Thus, Plaintiff's contention does not serve to save his claim.

### B. Whether the Law was Clearly Established

Defendant Tritschler contends that even assuming, *arguendo*, Plaintiff was subject to a seizure under the Fourth Amendment, the law was not clearly established at the time of the incident. Plaintiff also fails to address this argument. For this reason alone, his claim may be dismissed. Regardless, the Court agrees with Defendant Tritschler.

Defendant Tritschler cites to a number of cases in addition to *Childress*, albeit from other Circuits, which support his argument that Plaintiff was not seized. Further, the Court's research revealed an additional relevant case – *Carabajal*. Specifically, Defendant Tritschler cites to *Plumhoff v. Rickard*, 572 U.S. 765 (2014), where the driver's estate brought an action for violation of the Fourth Amendment against the police officers who shot the driver while he was in a fleeing vehicle in order to put an end to a dangerous car chase. In addressing the estate's claim, the Supreme Court noted that, as to the passenger Allen (who was the daughter of the

driver and also died), "[t]here seems to be some disagreement among lower courts as to whether a passenger in Allen's situation can recover under a Fourth Amendment theory. … We express no view on this question." 572 U.S. at 778 n.4. Thereafter, the Tenth Circuit decided *Carabajal*, *supra*.

In *Carabajal*, in the early morning hours of September 19, 2011, Mr. Carabajal ultimately pulled his vehicle over after being followed by police vehicles. However, after Mr. Carabajal stopped, he began moving his vehicle again and one of the officers fired into the vehicle and injured Mr. Carabajal. In Mr. Carabajal's vehicle were other passengers, including his infant son, V.M.C., who was in a car seat behind the front passenger. Suit was filed by Mr. Carabajal and on behalf of V.M.C.

V.M.C. argued his claim that he was unlawfully seized was distinguishable from *Childress* because there the police were attempting to deliver hostages from a dangerous situation. In addressing V.M.C.'s claim, the Tenth Circuit cited to *Plumhoff* and stated:

> the [Supreme] Court noted the disagreement among federal appellate courts as to whether an automobile passenger is seized when an officer uses deadly force against the driver of the vehicle. … Some circuits have interpreted the intent requirement in *Brower* to mean that the officer must have had the objective intent to stop a particular individual, while other circuits have interpreted it to require the objective intent to act in such a way that causes the intended result—a stop—regardless of the target.

*Carabajal*, 847 F.3d at 1212 (citations omitted). The Tenth Circuit then continued, stating it need not address whether *Childress* extended to passengers like V.M.C. because "even if Plaintiffs pled a plausible unreasonable seizure claim as to V.M.C., Officer Thornton would be entitled to qualified immunity. This is so because Plaintiffs cannot demonstrate the law was clearly established that a seizure of V.M.C. occurred in these circumstances." For the same reason, the Court finds Plaintiff cannot demonstrate the law was clearly established that a seizure

of him occurred under the circumstances here.  Accordingly, Defendant Tritschler is entitled to summary judgment based on qualified immunity.

**C.  Reasonableness of Conduct**

In light of the Court's findings and conclusions, it need not reach Defendant Tritschler's argument over whether his conduct was reasonable.

**IV.     CONCLUSION**

Based on the foregoing, it is **ORDERED**

(1)  That Defendant Tritschler's Motion for Summary Judgment (ECF No. 53) is GRANTED;

(2)  That, in accordance with this Order and the Order of February 2, 2108 (ECF No. 53), the Clerk shall enter JUDGMENT in favor of Defendants and against Plaintiff;

(3)  That Defendants are awarded costs and shall within 14 days of the date of this Order file a bill of costs, in accordance with the procedures under Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1, which shall be taxed by the Clerk of the Court; and

(4)  That there being no remaining claims or parties, the Clerk is directed to close this case.

DATED this 14th day of January, 2020.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge



ADAMS COUNTY CIT INVESTIGATION
5460 E. 56TH AVE
COMMERCE CITY, CO
NOVEMBER 21ST, 2014

LEGEND

V1 - DPD #4463
V2 - DPD #4465
V3 - DPD #4442
V4 - BLUE F-150
(TEMP TAG: 776323M)
S2 - SEMI #2
S3 - SEMI #3
S6 - SEMI #6

TIRE PUSH MARK - 3'10"
IN LENGTH

FENCE

*TO APPROXIMATE SCALE

**Exhibit A**
**Attachment 3**